IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAEJERRON L. VALENTINE,

                              Petitioner,

            vs.

ROB JEFFREYS,

                              Respondent.

8:23CV8

MEMORANDUM AND ORDER

This matter comes before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Daejerron L. Valentine. Filing No. 1. Respondent, Rob Jeffreys, has answered and filed the relevant state court records. *See* Filing No. 14 (Answer); Filing No. 10 (State Court Records). Also before the Court are Petitioner's Motion for Additional Records, Filing No. 16; Motion for Leave of Court to Amend Habeas Corpus Petition, Filing No. 22; and Motion for Evidentiary Hearing, Filing No. 23. For the reasons stated below, each of Petitioner's Motions will be denied.

Additionally, upon consideration of the briefing provided by both parties and application of the relevant law, even if the Petition was timely under 28 U.S.C. § 2244(d)(1), the Court finds that each of Petitioner's remaining claims are either procedurally defaulted or lack merit. Accordingly, the Petition is denied, and this case is dismissed with prejudice.

# I.  BACKGROUND[1]

## A.  Factual Basis for Petitioner's Arrest

On October 12, 2017, Detective Patrick Dempsey and his partner—both officers with the Omaha Police Department assigned to the "gang suppression unit"—were on patrol in a marked cruiser in the northeast part of Omaha, Nebraska.  At approximately 10:30 p.m., Dempsey observed a white vehicle driving in front of him near the intersection of 23d and Sprague Streets.  Dempsey initiated a traffic stop based on his belief that the tint on the windows of the vehicle was darker than what was legally permissible.[2]  After initiating the stop, Dempsey approached the vehicle on the driver's side.  As he did so, he observed that there was only one occupant, later identified as Petitioner.  Petitioner rolled down the window to speak with Dempsey.  As they spoke, Dempsey detected the strong odor of burnt marijuana coming from the vehicle, so he asked Petitioner to step out of the vehicle.  Petitioner denied smoking marijuana in the vehicle himself but admitted that a friend had smoked marijuana in the vehicle.

Dempsey searched Petitioner but did not locate any marijuana.  Dempsey then searched the vehicle.  In the center console between the front seats, Dempsey located two baggies of a substance which subsequent testing revealed was marijuana.  One of

---

[1] The facts relevant to the Petition and stated in this Memorandum and Order are not in dispute.  The Court's recitation of the facts is primarily drawn from the Petition, Filing No. 1; Respondent's Brief, Filing No. 15; Petitioner's Reply, Filing No. 20; Respondent's Reply, Filing No. 21; and the Nebraska Court of Appeals opinion in *State v. Valentine*, 936 N.W.2d 16, 21–22 (Neb. App. 2019).

[2] At Petitioner's trial, Dempsey testified that the tint on the rear side windows of a vehicle is permitted to be darker than the tint on the front side windows of a vehicle.  Thus, he believed that when the tint on the front side windows matches the tint on the back side windows, the tint on the front side windows is probably darker than is permitted.  Dempsey observed that the tint on the windows of the vehicle was all the same color and thus appeared to Dempsey to be darker than permitted.  Additionally, due to the dark color of the tint, Dempsey could not see whether anyone was in the vehicle.  Dempsey explained that if a vehicle has the correct tint in the front, a person should be able to observe the occupants inside the vehicle through the front side windows.

the baggies contained 18.8 grams of marijuana, and the other baggie contained 9.196 grams of marijuana, for a total weight of just under 1 ounce. Dempsey also located in the console "a working digital scale" and two empty baggies similar to those containing the marijuana.

As Dempsey searched the front passenger door of the vehicle, he located a gun hidden beneath the control panel for the door's window and locking mechanism. When he searched the trunk, Dempsey located $240 in cash hidden in a tennis shoe and an opened box of baggies that were similar to those that contained the marijuana. After searching the vehicle, Dempsey tested the window tint and discovered that the front side windows were darker than permitted by Nebraska law. Petitioner was placed under arrest and transported to police headquarters.

**B. Petitioner's Trial Proceedings and Sentencing**

Before trial, Petitioner moved to suppress evidence from Dempsey's search of the vehicle, arguing Dempsey conducted the stop without legal basis. Filing No. 10-11 at 30. Petitioner, through counsel, argued that officers could not have been able to investigate the tint of the vehicle so late at night and in poor lighting. *See* Filing No. 10-13 at 92. Petitioner also argued that the search of the vehicle went beyond the reasonable scope of the stop. Filing No. 10-13 at 92. After reviewing all the evidence, including Dempsey's testimony, the state district court concluded that the officers' actions on the night of Petitioner's arrest were appropriate and in accordance with Nebraska law. Filing No. 10-11 at 232. Thus, the state district court concluded Petitioner's rights under the Fourth and Fourteenth Amendments were not violated, and the court denied the motion to suppress. Filing No. 10-11 at 232.

3

Petitioner's jury trial began on July 23, 2018, in the District Court of Douglas County, Nebraska.  During the trial, Dempsey testified about the traffic stop and subsequent search of Petitioner's vehicle.  The State offered video evidence from Dempsey's body-worn camera.  The video depicted Dempsey's initial observations of Petitioner's vehicle prior to the traffic stop, his interactions with Petitioner, and his detailed search of the vehicle.  The video also depicted Dempsey's discovery of a gun hidden in the front passenger door.  The video shows that Dempsey opened the passenger door and searched a compartment at the base of the door but found nothing of evidentiary value. The video then showed that Dempsey pulled lightly on the control panel for the door's window and locking mechanism, and the control panel easily came off the door, revealing a "void" in the vehicle's door.  Inside the void, a gun was visible.  During his testimony at trial, Dempsey opined that given everything that he found in Petitioner's vehicle—including the marijuana, the gun, the digital scale, the cash, and the baggies—Petitioner intended to distribute the marijuana.  Dempsey testified that he did not find any items in the vehicle which would indicate that Petitioner, himself, had smoked or was planning on smoking the marijuana.

The State presented evidence at trial to prove that the gun found in Petitioner's vehicle was loaded and in working order.  DNA testing conducted on the gun revealed that Petitioner could not be excluded as the major contributor to the DNA found on the gun.  According to DNA testing, the probability of an individual not related to Petitioner matching the DNA profile from the gun was approximately 1 in 26.8 septillion.  The parties stipulated that Petitioner had previously been convicted of a felony.

On July 25, 2018, the jury convicted Petitioner of possession of a deadly weapon (firearm) by a prohibited person in violation of Neb. Rev. Stat. § 28-1206, and possession of marijuana, less than one ounce, in violation of Neb. Rev. Stat. § 25-416. Filing No. 10-11 at 147. Following an enhancement hearing, the state district court determined that Petitioner's conviction for possession of a deadly weapon (firearm) by a prohibited person was a second offense. *See* Filing No. 10-15 at 88-90; Filing No. 10-10 at 2. The state district court sentenced Petitioner to 20 to 20 years' imprisonment plus 1 day on that conviction. Filing No. 10-10 at 2. The court also sentenced Petitioner to a $300 fine for his possession of marijuana conviction. Filing No. 10-10 at 2.

**C.  Direct Appeal**

After sentencing, Petitioner, with trial counsel, filed a timely Notice of Appeal with the Nebraska Court of Appeals. Petitioner alleged that the state district court erred in (1) overruling his motion to suppress evidence seized as a result of the traffic stop because there was no probable cause to stop his vehicle and because the search of his entire vehicle was not reasonable or supported by probable cause; (2) incorrectly interpreting Neb. Rev. Stat. § 28-1206, as it read at the time of his arrest; and (3) giving improper jury instructions. *Valentine*, 936 N.W.2d 16 at 22–23.

The Nebraska Court of Appeals rejected all three claims on the merits in a published opinion entered on October 29, 2019. *Id.* at 23-32. Petitioner sought further review, which the Nebraska Supreme Court denied on December 12, 2019. Filing No. 10-1 at 4. Petitioner then filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on April 16, 2020. Filing No. 10-1 at 4.

### D.  State Court Postconviction Proceedings

On September 28, 2020, Petitioner filed a motion for postconviction relief, alleging four claims: (1) the state district court erred by sustaining the jury's guilty verdict for possession of a firearm by a prohibited person; (2) the state district court erred by denying his motion to suppress and allowing evidence from the stop and search of his vehicle into evidence at trial; (3) the state district court erred in various other respects at trial, resulting in cumulative error; and (4) his prior counsel was ineffective in various ways detailed below, including failing to make objections, failing to object to a stipulation that Petitioner was a felon, failing to call an expert witness, and failing to investigate.  Filing No. 10-12 at 13-33.  On August 2, 2021, the state district court denied Petitioner postconviction relief without an evidentiary hearing.  Filing No. 10-12 at 37-43.  The district court reasoned that Petitioner's ineffective assistance claims were not supported by his allegations and that the remaining claims were defaulted because they could have been raised during direct appeal but were not.  *See* Filing No. 10-12 at 38-42.

Petitioner timely appealed to the Nebraska Court of Appeals.  Filing No. 10-2 at 2.  On appeal, the State argued, for the first time, that Petitioner's postconviction motion was not verified as required by Neb. Rev. Stat. § 29-3001.  *See* Filing No. 10-8.  On May 16, 2022, the Nebraska Court of Appeals entered an order affirming the state postconviction district court's judgment, stating that the postconviction motion "was not verified as required by Neb. Rev. Stat. § 29-3001 (Reissue 2016).  As such, the defect in the motion supports the district court's dismissal.  *See State v. Burries*, [969 N.W.2d 96 (Neb. 2022)]."  Filing No. 10-2 at 4.  Petitioner filed a petition for further review, which was denied by the

Nebraska Supreme Court on July 15, 2022. Filing No. 10-2 at 4.  The mandate was issued on August 3, 2022.  Filing No. 10-2 at 4.

### E.  Federal Habeas Proceedings

On January 5, 2023, Petitioner filed the Petition in this case.  Filing No. 1.  After initial review, the Court dismissed Petitioner's sixth habeas claim, concluding it was not cognizable in a federal habeas action because it was based on errors in the state postconviction proceedings.  Filing No. 7 at 2-3.  Petitioner's remaining claims are as follows:

Claim One:     The denial of Petitioner's motion to suppress evidence at his original trial violated Petitioner's Fourth and Fourteenth Amendment rights because the traffic stop was not supported by reasonable suspicion and law enforcement lacked probable cause to search the entire vehicle.

Claim Two:     The state courts denied Petitioner of his Fifth Amendment right to due process of law and Sixth Amendment right to be informed of the nature of the accusations against him by erroneously interpreting the Nebraska statute governing possession of a deadly weapon by a prohibited person, Neb. Rev. Stat. § 28-1206.

Claim Three: The trial court erred in refusing to adopt Petitioner's proposed jury instructions in violation of his rights under the Fourteenth Amendment.

Claim Four:    Petitioner received ineffective assistance of trial and appellate counsel in violation of the Sixth Amendment because counsel (1) failed to object to introduction of video evidence that was not calibrated, as required by Nebraska law; (2) failed to object to the State's stipulation of Petitioner's prior convictions; (3) failed to object to erroneous jury instructions; (4) failed to interview or call an expert to refute the State's evidence that Petitioner was a major contributor to the DNA found on a firearm; and (5) failed to raise the issue of ineffective assistance of trial counsel in Petitioner's collateral attack of his conviction and sentence in post-conviction proceedings.

Claim Five:    Petitioner's conviction was not supported by sufficient evidence to support a jury verdict of guilt beyond a reasonable doubt.

Filing No. 7 at 1-2.

Respondent argues that the Petition is time-barred. Filing No. 15 at 9-10. According to Respondent, while the statute of limitations would normally be tolled during the pendency of state postconviction proceedings, Petitioner failed to verify his state postconviction motion, so it was not properly filed. Filing No. 15 at 10. Respondent argues that even if the Petition was timely, each of Petitioner's claims should be dismissed. The parties have briefed each of the issues. Upon review of the filings of record, an evidentiary hearing is not warranted. Petitioner's habeas claims are, therefore, fully submitted.

## II.  STATUTE OF LIMITATIONS

Respondent first argues the Petition is time-barred.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, establishes a one-year limitations period for state to file for federal habeas relief that runs from the latest of four specified dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  However, the statute of limitations period is tolled while a state post-conviction or other collateral review is pending. *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) (citing 28 U.S.C. § 2244(d)(2)).

Petitioner's direct review concluded on April 16, 2020, when the United States Supreme Court denied his request for certiorari, and the one-year statute of limitations began running that day. *See* Filing No. 10-1 at 4. While the statute of limitations is normally tolled during the pendency of state postconviction proceedings, the statutory toll only applies when the postconviction motion was properly filed. *See Walker v. Norris*, 436 F.3d 1026, 1030 (8th Cir. 2006) (concluding that an unverified habeas petition was not properly filed as required to toll the statute of limitations under § 2244). The Nebraska Court of Appeals concluded Petitioner's postconviction motion was not properly filed as it was not verified as required by Neb. Rev. Stat. § 29-3001. Filing No. 10-2 at 4. The Court of Appeals explained that this defect "supports the district court's dismissal. *See State v. Burries*, [969 N.W.2d 96 (Neb. 2022)]." Filing No. 10-2 at 4. Thus, absent tolling, Petitioner had until April 16, 2021, to file his habeas petition with this Court. Because his state postconviction motion was not properly filed and Petitioner did not file his habeas petition until January 5, 2023, his Petition would be barred by the statute of limitations unless equitable tolling applies.

The limitations period set forth in 28 U.S.C. § 2244(d)(1) may be subject to equitable tolling, whereby a litigant seeking such relief must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker*, 436 F.3d at 1032. Equitable tolling is proper "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Runyan v. Burt*, 521 F.3d 942, 945 (8th Cir. 2008) (internal quotation marks omitted). As such, "equitable tolling is an exceedingly narrow window of relief." *Id.* (internal quotation marks omitted). The burden of demonstrating grounds

warranting equitable tolling rests with the petitioner.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Construed liberally, Petitioner argues that equitable tolling should apply[3]  because he pursued his claims diligently and Respondent only raised the lack of verification for the first time on appeal of Petitioner's state postconviction motion.  Petitioner appears to argue that he had no reason to be concerned about the timeliness of his federal habeas claim because he timely filed his postconviction motion and the lack of verification was not raised until appeal.  Respondent argues that Petitioner's confusion or disagreement with Nebraska's postconviction law is not an "extraordinary circumstance."  Filing No. 21 at 2-3.  Respondent also argues that Petitioner did not diligently pursue his claims because the statute of limitations began running in 2020, but Petitioner waited until 2023 to file his habeas petition in this Court.  Filing No. 21 at 3.

It is unclear whether the Nebraska Supreme Court's 2022 decision in *Burries* may have been an extraordinary circumstance or impacted whether Petitioner diligently pursued his federal habeas claims.  In Nebraska, before *Burries*, verification was generally a "formal matter" and "as any other formal matter, an absence of, or defect in, verification [was] waived by failure to make a proper and timely objection."  *In re Int. of L.D.*, 398 N.W.2d 91, 98 (Neb. 1986).  However, in *Burries*, the Nebraska Supreme Court concluded that because of the wording of § 29-3001(2), "this usual rule is inapplicable in postconviction actions."  969 N.W.2d at 99.  The court explained that if a district court

---

[3] Petitioner also appears to argue that he is entitled to statutory tolling because the State waived its objection to the lack of verification by not raising it before the district court in opposing Petitioner's state court motion for postconviction relief.  However, the Supreme Court has held that "time limits, no matter their form, are 'filing' conditions" and a petitioner who fails to comply with those conditions "is not entitled to statutory tolling under § 2244(d)(2)."  *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

determines that a prisoner is entitled to a hearing on postconviction relief, § 29-3001(2) requires that the district court "cause notice thereof to be served on the county attorney." *Burries*, 969 N.W.2d at 100. The court further explained that "[t]hough the State, through its county attorneys, can, and often does, participate at earlier points in the process, the State is only called upon to take action with respect to a motion once it receives notice from the court." *Id.* Thus, the court declined to conclude that the State was "obligated to raise issues concerning a postconviction action at a time prior to that mandated by statute." *Id.* Further, although the district court's reasoning for dismissal "was not explicitly based upon lack of verification[,] . . . a correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result." *Id.*

The concurrence confirmed that, as in this case, "the lack of verification was not presented to the [state postconviction] district court." *Id.* at 101 (Miller-Lerman, J., concurring). The concurrence agreed that even though lack of verification was not presented to the district court and was not a reason given to deny the postconviction motion, "it would have been proper for the district court, as part of its preliminary review of the motion, to have raised the lack of verification sua sponte." *Id.* Thus, because the state district court could have dismissed the motion in *Burries* on that basis, that disposition could be "properly affirmed by this court for reasoning different than that set forth by the district court." *Id.* But the concurrence also stated that it was "puzzling why the majority broadly announced that the usual rule of waiver does not apply to the State in a postconviction action" and that permitting the State to raise the verification defect for the first time on appeal is "problematic and not to be encouraged." *Id.*

11

Respondent does not dispute that Petitioner's motion for postconviction relief was timely when it was filed on September 28, 2020. Moreover, the state postconviction district court did not raise lack of verification as a basis for its dismissal of Petitioner's postconviction motion. *See* Filing No. 10-12 at 38-42. It was not until February 2, 2022, barely two weeks after the Nebraska Supreme Court decided *Burries*, that the State argued, for the first time, that Petitioner's postconviction motion was not verified as required by Neb. Rev. Stat. § 29-3001. *See* Filing No. 10-8. The Nebraska Court of Appeals, relying on *Burries*, entered an order affirming the lower court's judgment on May 16, 2022, Filing No. 10-2 at 4, and the mandate was issued on August 3, 2022, Filing No. 10-2 at 4.

Although Petitioner filed his Petition within five months of the mandate, this delay was far short of the years that petitioners in other habeas cases had waited. *See, e.g., Pace*, 544 U.S. at 419 (concluding equitable tolling did not apply because petitioner "waited years, without any valid justification" to assert federal habeas claims); *Muhammad v. Jeffreys*, No. 8:23CV147, 2025 WL 81422, at *5 (D. Neb. Jan. 13, 2025) (concluding equitable tolling did not apply when over 10 years had passed between contested filing and the filing of his federal habeas action). However, for purposes of equitable tolling, it is also unclear why Petitioner waited at least five months after the mandate and eight months after the Court of Appeals' decision to preserve his federal habeas claims. While there is "[an] apparent unfairness to petitioners who spend years exhausting state remedies, only to discover their federal habeas relief is time barred because their state petition was never 'properly filed'":

> A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the

> federal court to stay and abey the federal habeas proceedings until state
> remedies are exhausted. A petitioner's reasonable confusion about whether
> a state filing would be timely will ordinarily constitute "good cause" for him
> to file in federal court.

*Walker*, 436 F.3d at 1030–31 (quoting *Pace*, 544 U.S. at 416).   Put another way, a prisoner litigating a claim in state court while the statute of limitations to file a federal habeas petition continues to run should not idly stand by and wait until they have concluded their state court proceedings before filing their federal habeas petition.

The Court will not decide whether Petitioner established that he pursued his rights diligently before this Court, or whether he met his burden under the equitable tolling test. Regardless of whether the Petition is barred by the statute of limitations, each of Petitioner's claims have been procedurally defaulted or could be dismissed on the merits. "Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (citing *Lambrix v. Singletary*, 520 U.S. 518 (1997)); *see also Winfield v. Roper*, 460 F.3d 1026, 1038 (8th Cir. 2006) (finding that the record before the court, which included the original transcripts, the record of the state court's evidentiary hearing, the petitioner's habeas petition, and numerous briefs, presented adequate information upon which to base a decision on the merits of the petitioner's claim). Because the merits are easily resolvable against Petitioner's claims, the Court need not resolve the somewhat complicated procedural bar.

### III.  OVERVIEW OF APPLICABLE LAW

Three strands of federal habeas law intertwine in this case.   They are (1) exhaustion and procedural default; (2) the deference that is owed to the state courts when

a federal court reviews the factual or legal conclusions set forth in an opinion of a state court; and (3) the standard for evaluating a claim of ineffective assistance of counsel. The Court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Petitioner's claims.

## A. Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(B)(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must, therefore, present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court

directly[4] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted).  Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999).  In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

---

[4] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

To be precise, a federal habeas court may not review federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A credible showing of actual innocence may also allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013), but to do so a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt,'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

## B. Deferential Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases

16

despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court."). The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

## C. The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for petitioners to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

18

different." *Id.* at 694.  Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action.  *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims.  *Knowles v. Mirzayance*, 556 U.S. 111 (2009).  In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome.  As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

## IV.  DISCUSSION

### A.  Claim One

In Claim One, Petitioner alleges that the trial court erred in denying Petitioner's motion to suppress evidence at his original trial because the traffic stop was not supported by reasonable suspicion and law enforcement lacked probable cause to search the entire vehicle.  Filing No. 20 at 9.  Petitioner also argues the Nebraska Court of Appeals erred in affirming the denial of the motion to suppress and in inaccurately summarizing the testimony and evidence related to the search.  Filing No. 20 at 10.

Petitioner's state court records confirm Claim One is not cognizable in federal court.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). This means that "Fourth Amendment claims asserted by state prisoners in federal habeas petitions are to be treated differently from other constitutional claims . . . ." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994).

In *Willett*, the Eighth Circuit set forth a two-part test for Fourth Amendment habeas claims:

> [A] Fourth Amendment claim is Stone-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.

*Id.* The first part of the test announced in *Willett* is "simple enough—either the state has a system available for raising Fourth Amendment claims or it does not." *Id.* at 1272. Further, because the opinion in *Stone* was "intended to short-circuit the district court's review of the record," part two of the test "does not require a probing review of the state court record." *Id.* at 1271-72. A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process" under *Willett*. *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007).

In applying the *Willett* two-part test to Petitioner's Claim One, there is no dispute that Nebraska provided a system in which Petitioner could raise his Fourth Amendment claims. The record shows this system allowed Petitioner to raise his Fourth Amendment claims in a pre-trial motion to suppress, Filing No. 10-11 at 30, and to challenge the Nebraska District Court's denial of that motion on direct appeal, Filing No. 10-4 at 7. As discussed above, the state district court concluded that the officers' actions on the night

of Petitioner's arrest were appropriate and in accordance with Nebraska law.  *See* Filing No. 10-11 at 232.  Thus, the state district court concluded Petitioner's rights under the Fourth Amendment were not violated and the motion to suppress was denied.  Filing No. 10-11 at 232.  The Nebraska Court of Appeals evaluated the state district court's decision and concluded that the state district court did not err in denying Petitioner's motion to suppress.  Filing No. 10-3 at 9.  Thus, the record shows Nebraska provided a system in which Petitioner could raise his Fourth Amendment claim.

Petitioner did not argue that there was an "unconscionable breakdown" in Nebraska's process or that he was prevented from raising his Fourth Amendment claim. Instead, Petitioner argues that this Court is not required to apply *Stone v. Powell* to his claim because the "factual findings of the state court [were] not supported by reasonable evidence."  Filing No. 20 at 12.  Petitioner provides no support for this position and the Court is bound by Supreme Court and Eighth Circuit precedent.  The record demonstrates that Petitioner was able to raise his Fourth Amendment claims and there is no evidence of an "unconscionable breakdown" in the system.  Accordingly, Claim One is dismissed.

## B.  Claims Two and Five

Petitioner's Second and Fifth Claims must be dismissed because they are issues of state law and rely solely on the state courts' interpretation of state law.  As noted above, Petitioner was charged with possession of a firearm by a prohibited person under Neb. Rev. Stat. § 28-1206.  In Claim Two, Petitioner argues the trial court, Nebraska Court of Appeals, and Nebraska Supreme Court denied Petitioner of his Fifth Amendment right to due process of law and Sixth Amendment right to be informed of the nature of the accusations against him.   In Claim Five, Petitioner argues his conviction was not

21

supported by sufficient evidence to support a jury verdict of guilt beyond a reasonable doubt. Both claims rely on Petitioner's claim that the trial court and Nebraska Court of Appeals erroneously interpreted Neb. Rev. Stat. § 28-1206.

At the time Petitioner was charged, § 28-1206 read:

(1) A person commits the offense of possession of a deadly weapon by a prohibited person if he or she:

(a) Possesses a firearm, a knife, or brass or iron knuckles and he or she:

(i) Has previously been convicted of a felony;

(ii) Is a fugitive from justice;

(iii) Is the subject of a current and validly issued domestic violence protection order, harassment protection order, or sexual assault protection order and is knowingly violating such order[.]

Filing No. 10-3 at 10.

The basis of Petitioner's arguments was that the word "or" did not appear anywhere between subsections (1)(a)(i), (1)(a)(ii), or (1)(a)(iii) of § 28-1206. Thus, for an individual to be defined as a "prohibited person," the individual must have, at the same time, been a previously convicted felon, a fugitive from justice, *and* subject to a current or validly issued domestic violence or harassment protection order. *See* Filing No. 10-3 at 10-11; Filing No. 10-4 at 25; Filing No. 20 at 14. At trial and on appeal, the State argued that § 28-1206 was ambiguous because there was neither an "and" nor an "or" between subsections (1)(a)(i), (1)(a)(ii), or (1)(a)(iii). *See* Filing No. 10-5 at 27.

The trial court and Nebraska Court of Appeals agreed that § 28-1206, as it read at the time of Petitioner's arrest, was ambiguous, and turned to the legislative history to resolve the ambiguity. Filing No. 10-3 at 10. The legislative history revealed that prior to revisions to the statute in 2017, § 28-1206 clearly defined a prohibited person as someone

22

who met only one of the criteria listed.  Filing No. 10-3 at 10.  In April 2017, the Nebraska Legislature amended § 28-1206.  Both the trial court and Court of Appeals concluded that the legislative history showed the Legislature inadvertently left out the word "or" between (1)(a)(ii) and (1)(a)(iii).  *See* Filing No. 10-3 at 13.  Accordingly, the legislative history surrounding the 2017 and 2018 revisions to § 28-1206 indicated that the Legislature intended that a prohibited person be defined as someone who met only one of the three criteria listed in subsections (1)(a)(i), (1)(a)(ii), or (1)(a)(iii).

Petitioner's argument in Claims Two and Five—that § 28-1206 requires all three criteria listed in subsections (1)(a)(i), (1)(a)(ii), or (1)(a)(iii) rather than just one—is purely an issue of state law, and state interpretation of that law.  Thus, Petitioner's claim is not cognizable in a federal habeas action.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (quotation omitted)).  Petitioner did not present this claim to the state courts as a constitutional claim but rather as a claim based entirely on state law.  *See* Filing No. 10-11 at 49 ("The language used on the face of the filed Information does not comply with state statute as revised on May 9, 2017.").  Thus, neither of these claims presents a justiciable federal issue.  Nor has Petitioner established that the trial court or Nebraska Court of Appeal's interpretation of § 28-1206 was based on an unreasonable determination of the facts, or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Accordingly, Claims Two and Five must be dismissed.

23

## C. Claim Three

In Claim Three, Petitioner alleged the trial court erred in refusing to adopt Petitioner's proposed jury instructions related to "possession," and the Nebraska Court of Appeals erred in affirming that decision. The jury instruction given read:

> The elements of the crime of Possession of a Deadly Weapon (Firearm) by a Prohibited Person, as charged in Count 2 of the Information, are:
>
> 1. That the defendant did possess a deadly weapon to [sic] specifically: a firearm; and
>
> 2. That the Defendant did so on or about October 12, 2017 in Douglas County, Nebraska; and
>
> 3. That the Defendant had previously been convicted of a felony.

Filing No. 10-3 at 14. Petitioner argues that he was denied due process under the Fourteenth Amendment because the trial court refused to change the instruction such that instead of reading "the defendant did possess a deadly weapon" the instruction should have read "the defendant did knowingly or intentionally possess a deadly weapon." Filing No. 10-4 at 29. The trial court and Nebraska Court of Appeals rejected Petitioner's argument because the jury instruction delineated "the elements of possession of a deadly weapon by a prohibited person using the exact language contained within § 23-1206." Filing No. 10-3 at 14.

As a general matter, "federal habeas relief is not available in cases of faulty jury instructions." *Aldridge v. Dormire*, No. 4:06-CV-1641, 2010 WL 883656, at *12 (E.D. Mo. Mar. 5, 2010) (citing *Estelle*, 502 U.S. at 71-72). "State prisoners are rarely granted federal habeas corpus relief based on instructional errors, because '[the] formulation of jury instructions primarily concerns the application and interpretation of state law[.]'" *Staples v. King*, No. 09-987, 2010 WL 3893614, at *8 (D. Minn. Sept. 14, 2010) (quoting

24

*Louisell v. Dir. of Iowa Dep't of Corrs.*, 178 F.3d 1019, 1022 (8th Cir. 1999)).  "For a petitioner to obtain relief based on a faulty jury instruction, the instruction must 'so infect[] the entire trial that the resulting conviction violates due process.'" *Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Petitioner's allegation in Claim Three is another issue of state law.  Although a habeas petitioner may characterize claims as due process violations, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Carson v. Director of the Iowa Dep't of Corr. Servs.*, 150 F.3d 973, 975 (8th Cir. 1998) (quotation omitted).  Accordingly, Petitioner's arguments in Claim Three are not cognizable in a federal habeas action.  Further, Petitioner has not established that the trial court or Nebraska Court of Appeal's interpretation of § 28-1206 in forming the jury instruction was based on an unreasonable determination of the facts; that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or that it was so faulty that it violated Petitioner's right to due process.  Thus, Claim Three must be dismissed.

## D.  Claim Four

Respondent argues that Petitioner's claims of ineffective assistance of counsel in Claim Four are procedurally defaulted.  Petitioner presented his ineffective assistance of counsel claims in his state postconviction motion, Filing No. 10-12 at 24-26, and in his subsequent appeal, Filing No. 10-7 at 15-18.  The Nebraska Court of Appeals did not address the merits of Petitioner's ineffective assistance of counsel claims because, as noted above, the court concluded Petitioner's postconviction motion was not properly filed as it was not verified as required by Neb. Rev. Stat. § 29-3001.  Filing No. 10-2 at 4.

25

Respondent argues, therefore, that Petitioner's ineffective assistance of counsel claims have not completed one full round of Nebraska's appellate review process and are therefore procedurally defaulted.

As stated above, a prisoner must "fairly present" the substance of each of his federal constitutional claims to the state courts before seeking federal habeas relief. *O'Sullivan*, 526 U.S. at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *Akins*, 410 F.3d 451 at 454–55. Thus, the Court agrees that the claims in Claim Four are procedurally defaulted. *See Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009) ("To reconsider whether a default actually occurred would be to second-guess the Nebraska Supreme Court on a question of state procedural law. '[F]ederal courts do not look at whether state courts have correctly applied their own procedural rules.'") (quoting *Clemons v. Luebbers*, 381 F.3d 744, 751 (8th Cir. 2004)).

Petitioner does not appear to dispute that his ineffective assistance claims were procedurally defaulted. Instead, Petitioner argues that the procedural default of his claims for ineffective assistance of appellate counsel is excusable. "'The doctrine barring procedurally defaulted claims from being heard is not without exceptions—[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.'" *Trevino v. Thaler*, 569 U.S. 413, 417 (2013). (quoting *Martinez*, 566 U.S. at 18). To excuse his procedurally defaulted ineffective assistance of counsel claims, Petitioner cites the United States Supreme Court's decision

in *Martinez v. Ryan*, 566 U.S. 1 (2012). Filing No. 20 at 19-20. In *Martinez,* the Supreme

Court held that:

> Where, under state law, claims of ineffective assistance of trial counsel must
> be raised in an initial-review collateral proceeding, a procedural default will
> not bar a federal habeas court from hearing a substantial claim of ineffective
> assistance at trial if, in the initial-review collateral proceeding, there was no
> counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 18. The Supreme Court elaborated on and expanded this cause

exception in *Trevino v. Thaler*, 569 U.S. 413 (2013). There, the Supreme Court held that

*Martinez* is applicable not only in circumstances where a state requires a defendant to

raise a claim of ineffective assistance of trial counsel in a state collateral proceeding, but

also when a state maintains a procedural regime that amounts to such a requirement (i.e.,

when it is "virtually impossible" for an ineffective assistance claim to be raised on direct

review). *Trevino*, 569 U.S. at 417.

Assuming, without deciding, that *Martinez* applies to federal habeas corpus cases

arising from Nebraska convictions, the holding in *Martinez* does not excuse any

procedural default of Petitioner's claims. In *Martinez*, the Court reasoned that a federal

habeas court should "hear a claim of ineffective assistance of trial counsel when an

attorney's errors (or the absence of an attorney) caused a procedural default in *an initial-

review collateral proceeding* . . . ." *Martinez*, 566 U.S. at 15 (emphasis added).[5] Even if

*Martinez* applied to Petitioner's ineffective assistance of counsel claims, "[t]o overcome

---

[5] Respondent appears to argue that *Martinez* cannot apply because the default, if any, occurred on appeal
rather than the initial postconviction motion. Specifically, Petitioner's postconviction motion included the
ineffective assistance of counsel allegations contained in Claim Four, and thus, his ineffective assistance
claims were presented to the state district court in an initial-review collateral proceeding. *See* Filing No.
10-12 at 24-27. Respondent asserts that while Petitioner's ineffective assistance claims were litigated in
the postconviction motion, the claims were not preserved for appeal. *See* Filing No. 21 at 4-5. The Court
need not decide whether the claims were properly preserved for appeal because, even if they were, they
lack merit.

the default, [Petitioner] must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [Petitioner] must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. Petitioner has not made such a demonstration with respect to any of his claims in Claim Four. Moreover, for the same reasons, even on the merits Petitioner cannot establish that the state postconviction district court's[6] conclusion on his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, *Strickland*.

### 1. Subpart 1: Uncalibrated Video Evidence

Petitioner's first subpart alleges his trial and appellate counsel failed to object to introduction of video evidence that was not calibrated, as required by Nebraska law. Petitioner claims he was "prejudice [sic] by the admission of this evidence because the jury was presumably misled be [sic] defective electronic equipment in violation of his right to due process." Filing No. 20 at 20. The postconviction district court concluded that this allegation failed "to provide any detail or authority as to how counsel would have been successful in making any of these objections, much less how the outcome of the trial would have been changed had they been made." Filing No. 10-12 at 39. Neither the Petition nor the Petitioner's brief offers any additional factual support for how the lack of calibration of electronic equipment violated his due process rights. Accordingly, the Court cannot conclude that the first subpart has merit or that the state postconviction district court's decision was contrary to, or involved an unreasonable application of, *Strickland*.

---

[6] As noted above, a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Worthington*, 631 F.3d at 497. A court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Nebraska Court of Appeals summarily affirmed the postconviction district court's decision on other grounds, and the postconviction district court's decision is thus the last reasoned decision.

### 2. *Subpart 2: Stipulation of Prior Convictions*

Petitioner's second subpart alleges his trial and appellate counsel failed to object to the prosecution's stipulation of Petitioner's prior convictions. In his state postconviction motion, Petitioner alleged counsel "was ineffective for entering into this stipulation, because the stipulation did not include the information that he was represented by counsel at the time of the conviction or sentencing." Filing No. 10-12 at 40. Petitioner in this case explained he was prejudiced by the stipulation

> in that it offered the jury only a prior offense, but faild [sic] to imply to the jury pursuant to Subsection(3)(b) the element of a second or subsequent offense which carried a greater penalty to that informed to the jury, under this presumption the jury was misled to believing this was a regular offense and only allow the jury to base its verdict on element pertinent to Subsection 28-1206(1)(i)(ii)(iii), in violation of the petitioner's fourteenth amendment right to due process.

Filing No. 20 at 20. Petitioner's argument is difficult to discern. To the extent this argument is different from the argument he presented in his state postconviction motion, it has not been fairly presented to the state court and would be procedurally defaulted on those grounds.[7] To the extent Petitioner makes the same argument as his state postconviction action, the Court agrees with the state postconviction district court that Petitioner "fails to provide any fact or statement that his prior conviction was defective, he just argues a better record should have been made. Counsel is not ineffective for simply failing to make the 'State's job more difficult.'" *See* Filing No. 10-12 at 40. The Court cannot conclude that this subpart has any merit, or that the state postconviction district court's decision was contrary to, or involved an unreasonable application of, *Strickland*.

---

[7] To the extent Petitioner argues in this subpart that counsel failed to object to the trial court's interpretation of § 28-1206(1)(i), (ii), and (iii), that argument was not fairly presented as a claim for ineffective assistance of counsel and the substance has been addressed above.

### 3. *Subpart 3: Objection to Jury Instructions*

Petitioner's third subpart alleges trial and appellate counsel failed to object to erroneous jury instructions. Petitioner also argues before this Court that counsel was ineffective for failing to "object to the sentencing enhancement." Filing No. 20 at 21. Petitioner does not identify which instruction his trial counsel should have objected to, much less any argument about why the failure to object was constitutionally defective. The Petition only states that "the jury was offered instructions that were not consistent with Nebraska law pertaining to the crime charged." Filing No. 1 at 19. Petitioner's allegations are conclusory and vague, and thus fail to support his claim. This is particularly true because the record shows that both trial and appellate counsel raised several objections to the jury instructions at trial and on appeal. *See* Filing No. 10-4 at 7-8. Thus, neither this Court nor the state postconviction district court could discern how Petitioner was prejudiced. The Court therefore cannot conclude that this subpart has any merit, or that the state postconviction district court's decision was contrary to, or involved an unreasonable application of, *Strickland*.

### 4: *Subpart 4: Failure to Call an Expert*

Petitioner's fourth subpart alleges his counsel was ineffective by failing to interview or call an expert to refute the prosecution's evidence that Petitioner was a major contributor to the DNA found on the firearm. Petitioner argues that a defense expert would have testified about the "proper procedural process" for DNA testing and "would have stated the State has failed to use the proper procedural process of DNA testing as required by the State of Nebraska and Federal government the use of (75 RFU DNA testing)." Filing No. 20 at 21. The state postconviction district court rejected Petitioner's

argument because Petitioner's allegation lacked detail such as an expert's name or what the expert's testimony would be. Filing No. 10-4 at 40-41.

The Court agrees with the state postconviction district court's reasoning. Because of the strength of the tool of cross examination, there is no general duty under the AEDPA for defense counsel to call an expert witness. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011). As noted by the state postconviction district court, the Supreme Court explained in *Harrington* that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense. In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* at 111. Petitioner's allegations lack detail sufficient to meet the high burden of demonstrating his counsel's failure to call an expert was deficient. Moreover, the allegations he does make could have been, and in fact were, addressed through cross examination of the prosecution's expert. *See* Filing No. 10-14 at 189-92. The Court therefore cannot conclude that this subpart has any merit, or that the state postconviction district court's decision was contrary to, or involved an unreasonable application of, *Strickland*.

### 5. Subpart 5: Ineffective Assistance in Postconviction Proceedings

Petitioner's final argument asserts that counsel failed to raise the issue of ineffective assistance of trial counsel in Petitioner's collateral attack of his conviction and sentence in postconviction proceedings. Because there is no right to counsel in state postconviction proceedings, there is no habeas relief for ineffective assistance of postconviction counsel. *See Coleman*, 501 U.S. at 757. Accordingly, there is no cognizable habeas claim under Subpart 5.

In sum, Petitioner's allegations of deficient performance are conclusory and speculative with no support in the record. Such conclusory allegations of ineffective assistance of counsel are insufficient to warrant habeas corpus relief. *See Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (vague and conclusory habeas claims do not entitle a petitioner to relief); *Spillers v. Lockhart*, 802 F.2d 1007, 1009-10 (8th Cir. 1986) (same). Accordingly, regardless of whether Petitioner's ineffective assistance claims were defaulted, they have no merit under *Martinez* or *Strickland*.

## E. Motion to Expand the Record

Petitioner's Motion captioned "Designation of State Court Records in Support of Petitioner's Brief," construed liberally, moves the court to include several documents in the State Court Records. Filing No. 16. Specifically, Petitioner requests:

**State Court Record of Proceedings**

1. Respondent's motion to dismiss file in the postconviction proceeding.

2. District Court Order denying petitioner's postconviction relief.

3. District Court Order denying Second Suppression hearing.

**STATE COURT OF APPELLATE ORDERS AND OPINIONS**

4. Docket sheet of Clerk of the Nebraska Supreme Court/Court of Appeals for Petitioner's postconviction appeal, State v Valentine, A-21-707.

**State Court Record of Court Orders**

5. District Court Order denying successive Motion for Postconviction Relief entered November 22, 2022.

Filing No. 16 at 1 (spelling corrected).

The Court will liberally construe the motion as one to expand the record. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Williams v. Steele*, 2013 WL 5838727, at *2 (E.D. Mo. Oct. 30, 2013)

(citing *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)).  Rule 6(a) of the *Rules Governing Section 2254 Cases in the United States District Courts* provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  "The 'good cause' that authorizes discovery under Rule 6(a) requires a showing 'that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to [habeas] relief.'" *Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (quoting *Bracy*, 520 U.S. at 909 (quotation omitted)).

In contrast, a motion to expand the record is governed by Rule 7 of the *Rules Governing Section 2254 Cases in the United States District Courts.*  Rule 7 permits courts to direct the parties to expand the record by submitting additional materials relating to the petition.  However, this power is permissive and granted or denied at the court's discretion.

"[T]he standard to expand the state-court record is a stringent one." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022).  "When a petitioner seeks to introduce evidence pursuant to [Rule 7], the conditions prescribed by § 2254(e)(2) must still be met." *Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007) (citing *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004)).  Courts have likewise suggested that those conditions must be met when a petitioner seeks discovery pursuant to Rule 6.  *See, e.g.*, *Marcyniuk v. Payne*, 39 F.4th 988 (8th Cir. 2022); *Worthington v. Roper*, 2008 WL 2952116 (E.D. Missouri, Eastern Division, July 28, 2008).

Under 28 U.S.C. § 2254(e)(2) "[a] habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing

unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). A petitioner must also show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). "Federal courts may conduct evidentiary hearings and supplement the state record only in extraordinary circumstances because of the obligation to defer to state courts' factual determinations." *Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1) and (e)(2)). A federal habeas court is "not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

Petitioner offers no explanation as to why the documents he requests are necessary to his Petition. Nor does Petitioner assert that he is entitled to relief through a new or retroactive law, nor does he explain why due diligence could not have previously discovered the facts contained in the documents he requests. The U.S. Supreme Court has held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, the record cannot be expanded in this case to address Petitioner's claims that were rejected on the merits by the state appellate courts absent the necessary showing under 28 U.S.C. § 2254(e). Petitioner does not explain how further factual development would show that he is entitled to habeas relief. Specifically, Petitioner fails to explain how further discovery would show his habeas claims are not procedurally defaulted or how the additional record would support his position on the merits.

34

Accordingly, he has not established he is entitled to expand the record and his request to expand the record is denied.

**F.  Motion for Leave to Amend Habeas Petition**

Petitioner moves to amend the Petition to include a claim of actual innocence. Filing No. 22.  Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleadings with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  In addition, the rule states the "court should freely give leave when justice so requires."  *Id.*  "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (internal quotation marks omitted).

Petitioner argues he is actually innocent because although evidence was introduced to show he was a felon, no evidence in the record shows he was a fugitive from justice or that he was the subject of a current and validly issued domestic violence protection order, harassment protection order, or sexual assault protection order and is knowingly violating such order.  Filing No. 22 at 1-2.  In other words, Petitioner argues once again that the state court incorrectly interpreted Neb. Rev. Stat. § 28-1206, as it read at the time of his arrest.  Petitioner's actual innocence arguments depend on whether Nebraska courts correctly interpreted Nebraska law.  Accordingly, for the same reasons the Court dismissed Claims Two and Five of the Petition, Petitioner's proposed amendment would be futile and leave to amend will not be granted.

**G.  Motion for Evidentiary Hearing**

Petitioner has requested that an evidentiary hearing be conducted on his claims. Rule 8(a) of the *Rules Governing Section 2254 Cases in the United States District Courts* states in pertinent part: "If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claims. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  An evidentiary hearing may be held only when the habeas petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir.2002) (internal quotation omitted).  For the reasons already stated, Petitioner has not demonstrated that an evidentiary hearing is warranted because he has failed to show that his Claims fall within the exceptions allowing federal review of procedurally defaulted claims or that his claims have merit.

**H. Conclusion**

For the reasons stated, Petitioner's claims are without merit or are procedurally defaulted.  Further, for any defaulted claims, Petitioner has failed to show "cause and prejudice" or a "miscarriage of justice," which are the only exceptions allowing federal review of procedurally defaulted claims.  *See Dretke v. Haley*, 541 U.S. 386, 392–93 (2004); *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).  Accordingly, the Petition must be dismissed with prejudice in its entirety.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). The Court has applied the appropriate standard and determined Petitioner is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.     Petitioner's Petition, Filing No. 1, is dismissed with prejudice.

2.     Petitioner's Motion, construed as a Motion for Additional Records, Filing No. 16; Motion for Leave of Court to Amend Habeas Corpus Petition, Filing No. 22; and Motion for Evidentiary Hearing, Filing No. 23, are denied.

3.     The Court will not issue a certificate of appealability in this matter.

4.     The Court will enter a separate judgment in accordance with this order.


Dated this 25th day of March, 2025.


BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge